```
1                  UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF NORTH CAROLINA
2                      (Asheville Division)

3

4   ---------------------------x
    UNITED STATES OF AMERICA,   :
5             Plaintiff,        :
                                :
6                               :
    vs                          :Criminal Action:1:10-CR-62
7                               :
                                :
8   PAUL JEREMIAS,              :
                  Defendant.    :
9   ---------------------------x

10

11                              June 16, 2011
                                Asheville, North Carolina

12

13        The above-entitled action came on for a Rule
    11/Entry of Guilty Plea Hearing Proceeding before the
14  HONORABLE DENNIS LEE HOWELL, United States Magistrate
    Judge, in Courtroom 2, commencing at 10:45 a.m.

15

16            APPEARANCES:
17            On behalf of the Plaintiff:
              DAVID S. THORNELOE, Esquire
18            Office of the U.S. Attorney - WDNC
              233 U. S. Courthouse Building
19            100 Otis Street
              Asheville, North Carolina  28801
20
              On behalf of the Defendant:
21            SEAN P. DEVEREUX, Esquire
              The Jackson Building
22            22 South Pack Square, Suite 1100
              Asheville, North Carolina  28801
23

24
    Tracy Rae Dunlap, RMR, CRR              828.771.7217
25  Official Court Reporter
```

**I N D E X**

                                                        Page
Reporter's Certificate........................28

# P R O C E E D I N G S

1

2      THE COURT:  Are you gentlemen ready?

3      MR.  THORNELOE:  Yes, sir.

4      THE COURT:  Mr.  Thorneloe, are you ready?

5      MR.  THORNELOE:  Yes, Your Honor.  If I can, it

6  may expedite things if I can go ahead -- Your Honor, I

7  got your request to fix some of the typos on there, and

8  those changes have been made.  I've signed it, and the

9  defense counsel and the defendant, I believe, are signing

10  it now.

11      Before we begin, I'd like to just hand it to the

12  Court.

13      MR.  THORNELOE:  That will be fine.

14      MR.  DEVEREUX:  I'll fix this.  I don't think it's

15  not necessary, but on the issue of timeliness we filed a

16  copy of it with the U. S. attorney's office.

17      THE COURT:  There's no --

18      MR.  DEVEREUX:  There is no real substance.

19      THE COURT:  All right.

20      MR.  DEVEREUX:  I attempted to look at it

21  (inaudible).

22      MR.  THORNELOE:  May I approach the Court?

23      THE COURT:  Yes, sir.

24      What we've got now is a new plea agreement that

25  takes care of some of the typographical errors.

1    MR. THORNELOE: Yes, sir. Yes, Your Honor. It

2 changes where it referred to a female article to a male

3 article.

4    THE COURT: All right. It looks like, to me,

5 we're ready to take care of this matter.

6    I take it, Mr. Devereux, you've advised

7 Mr. Jeremias about 18, United States Code, Section

8 3143(a)(2).

9    MR. DEVEREUX: (Inaudible.)

10    THE COURT: All right. I'm now going to call the

11 case of United States of America versus Paul Jeremias,

12 which is file 1:10-CR-62, and which is on the calendar

13 for the purpose of a Rule 11 proceeding.

14    Mr. Jeremias, I am advised that you have filed a

15 written plea agreement with the government in regard to

16 the charges that are pending against you in this case.

17 As a result, I am required by the Federal Rules of

18 Criminal Procedure to inquire and advise you concerning

19 that agreement.

20    I am going to have to ask you some questions, and

21 you're going to be required to personally respond to

22 those questions under oath. So I need for you to stand

23 up, please, sir. Put your left hand on the Bible, raise

24 your right hand, and take the oath to tell the truth.

25    I don't have a problem with that. Ms. Wurst, if

1   you would have Mr. Jeremias affirm that he will tell the

2   truth in regard to this matter.

3           THE DEFENDANT:  I affirm.

4                   (Witness affirms at 10:48 a.m.)

5                          **EXAMINATION**

6           BY THE COURT:

7   Q.      I'm going to let you set down, Mr. Jeremias.  We

8   have several questions to go over, and I want you to be

9   comfortable.

10          Mr. Jeremias, do you understand that you are now

11  under oath and you are required to truthful answers to

12  the questions I am about to ask you?

13  A.      I understand.

14  Q.      Do you understand that if you give false

15  information under oath you may be prosecuted for perjury

16  or false statement?

17  A.      I understand.

18  Q.      Are you able to hear and understand my questions

19  to you?

20  A.      Yes, I am.

21  Q.      Do you understand that you have the right to have

22  a United States district judge conduct this proceeding?

23  A.      I understand.

24  Q.      Recognizing your right to proceed before a

25  district judge, do you expressly consent to proceed in

1    this court, that is, before a United States magistrate

2    judge?

3    A.    Yes.

4    Q.    Mr. Jeremias, give me your full name please.

5    A.    Paul Jeremias.

6    Q.    Do you have a middle name, sir?

7    A.    I do not.

8    Q.    How old are you, sir?

9    A.    I'm 53.

10   Q.    If you would, please describe to me your level of

11   education.  How far did you go in school?

12   A.    I have an MFA.  I'm sorry.  I have a bachelors of

13   applied arts and MA, and an MFA.

14   Q.    All right.  Let's go back a little further than

15   that.

16         When did you graduate from high school?

17         It should have been back about '75 or '76?

18   A.    I would say, yes, that would be correct.

19   Q.    Where were you at?  Where did you graduate from

20   high school?

21   A.    Parkside High School in Dundas, Ontario, Canada.

22   Q.    Parkside, is that one word?

23   A.    Yes, it is.

24   Q.    And that is in what city in Ontario?

25   A.    Dundas.

```
 1  Q.     Could you spell it for me please?
 2  A.     D U N D A S.
 3  Q.     And then you went to college; is that correct?
 4  A.     I did.
 5  Q.     And what college did you graduate from, sir?
 6  A.     I did a year at the University of Western Ontario
 7  in London, and then I transferred to Ryerson
 8  Polytechnical University --
 9  Q.     All right.
10  A.     -- for my first bachelor of applied arts.
11  Q.     All right.  Now one year at what university?
12  A.     Western -- at Western University.
13  Q.     Is that in Ontario?
14  A.     Yes, it is.  It's in London, Ontario.  It's
15  Western.  Western.
16  Q.     And then you went -- transferred to what
17  institution?
18  A.     Ryerson.
19  Q.     Could you spell that one for me please?
20  A.     R Y E R - --
21  Q.     R Y E R?
22  A.     S O N.  Ryerson Polytechnical University.  And
23  that was in Toronto.
24  Q.     And got your BS -- BA?
25  A.     Bachelor of applied arts, Your Honor.
```

```
 1   Q.     Okay.  When did you get that degree?

 2   A.     1977 to 1981.

 3   Q.     So you got it in '81; right?

 4          And then you went and got your masters in fine

 5   arts.  And where did you go to do that?

 6   A.     At the University of New Mexico in Albuquerque.

 7   And the program required me to get my MA first, and then

 8   I got my MFA.

 9   Q.     So you got a master of arts, now, when?

10   A.     I started during '84, and I got my MA in '86.

11   Q.     And then got your masters of fine arts?

12   A.     Yes, in 1990.

13   Q.     From the same institution?

14   A.     Yes, sir.

15   Q.     Any other educational training that you can think

16   of, sir?

17   A.     Educational training.  Other than work experience,

18   no.

19   Q.     No.  Going to school?

20   A.     No.  That's it.

21   Q.     Are you presently under the influence of any

22   intoxicating liquors?

23   A.     I am not.

24   Q.     Are you presently under the influence of any

25   narcotics?
```

```
 1   A.      I am not.

 2   Q.      Are you presently under the influence of any drugs

 3   of any kind?

 4   A.      I am not.

 5   Q.      Have you taken any medication within the last 48

 6   hours?

 7   A.      I have not.

 8   Q.      Are you currently under the care of a physician?

 9   A.      No, I'm not.

10   Q.      Have you ever been treated for mental illness?

11   A.      No, I have not.

12   Q.      Have you ere been treated for substance abuse?

13   A.      I have not.

14   Q.      Is your mind clear, and do you understand that

15   you're here today to enter a guilty plea that cannot

16   later be withdrawn?

17   A.      I understand that.

18   Q.      Have you and Mr. Devereux reviewed the Bill of

19   Indictment, and have you and he reviewed the plea

20   agreement in this case?

21   A.      Yes, we have.

22   Q.      From my examination of the plea agreement I'm

23   advised that you're pleading guilty to Count One as

24   contained in the Bill of Indictment; is that correct?

25   A.      Yes, sir.
```

Q.    Count One of the Bill of Indictment reads as

follows:

On or about April 15th 2010, in Buncombe County,

within the Western District of North Carolina and

elsewhere, Paul Jeremias did knowingly possess one or

more matters; to-wit:  Compact discs and a computer hard

drive containing one or more visual depictions which had

been mailed, shipped, and transported in and affecting

interstate and foreign commerce, and which had been

produced using materials which had been mailed, shipped

and transported in interstate and foreign commerce by any

means, including by a computer, the production of which

involved the use of a minor engaging in sexually explicit

conduct as defined in Title 18, United States Code

Section 22562, and such visual depiction being of such

conduct.  All in violation of Title 18, United States

Code, Section 2252(A)(4)(b).

Are you pleading guilty to that offense?

MR.  DEVEREUX:  If Your Honor recalls (inaudible).

THE COURT:  Mr.  Thorneloe.

MR.  THORNELOE:  That's correct, Your Honor.  That

was adopted by the Court, as well, I believe, but I agree

that's not particularly relevant.

THE COURT:  I can't change what's in that Bill of

Indictment.  Now can it be used as evidence?  No, I don't

1  think so.

2  **FURTHER EXAMINATION**

3       BY THE COURT:

4  Q.    All right.  Are you pleading guilty to the offense

5  that I read to you, Mr.  Jeremias, that's in the Bill of

6  Indictment?

7  A.    Yes, I am.

8  Q.    The law requires that I advise you of the

9  essential elements of such an offense.  Before I do so, I

10  am going to read to you the statute that it is alleged

11  that you have violated.

12       Any person who knowingly possesses, or knowingly

13  accesses with intent to view one or more books,

14  magazines, periodicals, films, videotapes, or other

15  matter which contains any visual depiction that has been

16  mailed or has been shipped or transported using any means

17  or facility of interstate or foreign commerce, or in or

18  affecting interstate or foreign commerce, or which has

19  been produced using foreign commerce, or which was

20  produced using materials which have been mailed or so

21  shipped or transported by any means, including by

22  computer, if the producing of such visual depiction

23  involves the use of a minor engaging in sexually explicit

24  conduct.  That is 18, United States Code, 2252(A)(4)(b).

25       The elements of the offense described in Count One

1   of the Bill of Indictment and in the statute are as

2   follows:

3       1.   That you knowingly possessed one or more

4   books, magazines, periodicals, films, videotapes, or

5   other matter as described in the Bill of Indictment;

6       2.   That the materials as described in the Bill of

7   Indictment, which you possessed, had been shipped or

8   transported in interstate or foreign commerce, or was

9   produced using materials which had been so mailed,

10  shipped or transported, including transmission by means

11  of a computer;

12      3.   That the books, magazines, periodicals, films

13  videotape, or other material described in the Bill of

14  Indictment were produced of visual depictions involving

15  the use of a minor engaging in sexually explicit conduct,

16  and such visual depiction is of such conduct; and

17      4.   That you did all such acts knowingly,

18  intentionally, willfully, and unlawfully.

19      Do you understand each element of the offense

20  charged as I have explained them to you?

21  A.   Yes, sir.

22  Q.   Do you understand that upon a plea of "not guilty"

23  the government would be required to prove each element of

24  the offense charged beyond a reasonable doubt?

25  A.   I do.

Q.    Do you understand that the government would be required to prove that the unlawful acts were committed knowingly, willfully, intentionally, and unlawfully?

A.    I do.

Q.    I am also required by law to advise you concerning the maximum and any minimum penalties prescribed by law for such an offense.  Those maximum and potential minimum penalties are as follows.

The maximum possible penalty for such an offense is a term of imprisonment of not more than ten years, a fine not to exceed the sum of $250,000, or both, a term of supervised release of not less than five years and not more than life, and a $100 special assessment.  However, if you had a prior conviction under this chapter, Chapter 71, Chapter 109A, Chapter 117, or under Section 920 of Title X, or under the laws of any state relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sell, distribution, shipment, or transportation of child pornography, then you would be sentenced to a term of imprisonment of not less than ten years nor more than 20 years, a fine not to exceed the sum of $250,000, or both, a term of supervised release of not less than five years but not more than life, and a $100 special assessment.

1        Do you fully understand the charges against you as

2    contained in Count One of the Bill of Indictment,

3    including those maximum and potential minimum penalties?

4    A.      I do.

5    Q.      Mr. Jeremias, have you been advised by

6    Mr. Devereux that if you're not a citizen of the United

7    States your guilty plea may have adverse immigration

8    consequences?

9    A.      I do.

10   Q.      Have you been advised by Mr. Devereux that if

11   you're not a citizen of the United States your guilty

12   plea may result in deportation or removal from the United

13   States?

14   A.      Yes.

15   Q.      Mr. Jeremias, if the Court imposes an active term

16   of imprisonment of more than one year the Court is

17   required, also, to order a term of what is called

18   supervised release. And a term of supervised release may

19   be ordered in other circumstances. This means that after

20   a defendant is released from prison there are certain

21   terms and conditions they will be required to follow.

22   The length of supervised release usually ranges from one

23   to five years but may be more or less than that for

24   certain offenses.

25        Do you understand the terms of "supervised

```
 1  release" as I have explained them to you?
 2  A.     Yes, sir.
 3  Q.     Do you understand that if you violate the terms
 4  and conditions of supervised release you could be
 5  returned to prison for an additional period of time?
 6  A.     Yes, sir.
 7  Q.     Do you understand that parole has been abolished
 8  in the federal system, and that if you are sentenced to a
 9  term of imprisonment you will not be released on parole?
10  A.     Yes.
11  Q.     Have you and Mr. Devereux discussed how the
12  sentencing guidelines may apply in your case?
13  A.     Yes.
14  Q.     Do you believe you understand how these guidelines
15  may apply to you, sir?
16  A.     Yes.
17  Q.     Do you understand that the Court will not be bound
18  by the sentencing guidelines but, nonetheless, must
19  consult those guidelines and take them in to account when
20  sentencing?
21  A.     Yes, sir.
22  Q.     Do you understand that the sentence the Court will
23  impose will be within the statutory limits and in the
24  Court's sound discretion and could be greater or less
25  than the sentence as provided for by the guidelines?
```

```
 1   A.      I understand.
 2   Q.      Do you understand that the Court will follow the
 3   procedural components of the guidelines system, which
 4   means that the probation office will prepare a
 5   presentence report which contains guidelines
 6   calculations, and both you and the government will have
 7   an opportunity to object to any alleged deficiencies in
 8   the report?
 9   A.      Yes, sir.
10   Q.      Do you understand that in some circumstances you
11   may receive a sentence that is different, that is either
12   higher or lower than that called for by the guidelines?
13   A.      Yes, sir.
14   Q.      Do you understand that if the sentence is more
15   severe than you expect, or the Court does not accept the
16   government's sentencing recommendation, you will still be
17   bound by your plea and have no right to withdraw the plea
18   of "guilty?"
19   A.      I understand.
20   Q.      Do you understand that the Court has the
21   discretion, in appropriate circumstances, to order you to
22   make restitution to any victim of the offense?  The Court
23   may, also, in the appropriate circumstance, require you
24   to pay the cost of your confinement in prison, or cost of
25   supervision, or special investigative cost, or all of
```

1  these costs?  The Court may also require you to forfeit

2  property involved in the offense.

3        Do you understand these requirements as I have

4  explained them to you?

5  A.    Yes.

6  Q.    Do you understand that you have a right to plead

7  not guilty, to have a speedy trial before a judge and

8  jury, to summons witnesses to testify in your behalf, and

9  to confront witnesses against you?

10  A.    Yes, sir.

11  Q.    Do you understand that if you exercise your right

12  to trial you would be entitled to the assistance of an

13  attorney, that you would not be required to testify, that

14  you would be presumed innocent, and the burden would be

15  on the government to prove your guilt beyond a reasonable

16  doubt?  Do you understand all of these rights?

17  A.    Yes, sir.

18  Q.    Do you understand that by entering a plea of

19  guilty you forfeit and waive, or give up, your right to

20  plead not guilty, to a trial by a jury and at that trial

21  the right to the assistance of counsel, the right to

22  confront and cross-examine witnesses against you, and the

23  right against compelled self-incrimination, or any other

24  rights associated with a jury trial?

25        Do you understand that by entering this plea of

```
1   guilty you are waiving, or giving up, all of these
2   rights?  There will be no trial.  If your plea of guilty
3   is accepted there will be one more hearing where the
4   district court will determine (a) whether there is a
5   factual basis for your plea and (b) what sentence to
6   impose.  Do you understand all of these things?
7   A.    Yes.
8   Q.    Are you in fact guilty of the count in the Bill of
9   Indictment to which you have come to court today to plead
10  guilty?  That is, did you commit the act described in
11  Count One of the Bill of Indictment?
12  A.    Yes.
13  Q.    Is your plea of guilty voluntary and not the
14  result of coercion, threats or promises other than those
15  contained in the written plea agreement?
16  A.    Yes.
17  Q.    Do you understand that entering a plea of guilty
18  to a felony charge may deprive you, at least for a time,
19  of certain civil rights such as the right to vote, hold a
20  public office, serve on a jury, and possess a firearm?
21  A.    Yes.
22  Q.    Is your willingness to plead guilty the result of
23  prior discussions between your attorney, Mr.  Devereux,
24  and he having discussions with Mr.  Thorneloe, the
25  attorney for the government?
```

A.      Yes.

Q.      As a result of those discussions have you and the government entered into a plea agreement in regard to this case?

A.      Yes.

        THE COURT:  Mr.  Thorneloe, if you would, please present the terms of that agreement.

        MR.  THORNELOE:  Yes, Your Honor.  Your Honor, the plea agreement is in writing.  It was originally filed with the court on June 14th 2011.  Today we made a few amendments to the court -- to the plea agreement and refiled it with the Court.

        In Count One our -- in paragraph one, the defendant agrees to enter a voluntary plea of guilty to Count One as set forth in the Bill of Indictment, and he admits to being, in fact, guilty as charged in that count.

        In paragraph 6 the parties agree they will jointly recommend the Court make the following findings and conclusions as to the United States Sentencing Guidelines.  That pursuant to the United States Sentencing Guideline 2G2.2A, the defendant's base offense level is 18.

        In paragraph 6(b) the parties recommend the offense involved more than 600 images.

1        In paragraph 6(c) the defendant agrees to register

2    as a sex offender and agrees to all the terms listed in

3    that paragraph.

4        Paragraph 6(d) provides that the defendant clearly

5    demonstrates acceptance for his conduct, as well as all

6    other relevant conduct.  The United States agrees to

7    recommend a two level reduction in offense level.

8        In paragraph 6(e) the defendant agrees that -- the

9    parties agree that the defendant's plea of guilty is

10   timely, and the United States would make a motion

11   requesting an additional one level reduction at the

12   appropriate time.

13       Paragraph L.  Notwithstanding the foregoing

14   stipulations, the United States reserves its right to

15   argue any further enhancements that is may apply.

16       THE COURT:  I don't have a paragraph L.

17       MR.  THORNELOE:  I'm sorry, Your Honor.  That

18   changed slightly because of the amendments.  It should be

19   the last paragraph there.

20       THE COURT:  Paragraph K?

21       MR.  THORNELOE:  That sounds right, Your Honor. It

22   should say notwithstanding the foregoing stipulations,

23   the United States reserves its right to argue any further

24   enhancements that may apply.

25       THE COURT:  Yes, sir.

         MR.   THORNELOE:   Thank you, Your Honor.

         Your Honor, in paragraph 20, the defendant agrees

to waive any and all challenges related to the uses of

all the offenses or relevant conduct based on *Free Speech*

*versus Ashcroft*.   The cite is *535, United States 234,*

*2002.*

         Your Honor, all the parties have signed the plea

agreement on the last page.

         The parties agree to all the terms of the

agreement whether I've read them or not.

         THE COURT:   Thank you very much, Mr.   Thorneloe.

                    **FURTHER EXAMINATION**

         BY THE COURT:

Q.     Mr.   Jeremias, do you understand and agree with

the terms of the plea agreement as they've just been

explained to you by Mr.   Thorneloe?

A.     Yes.

Q.     And I believe your signature is on the original

plea agreement and, also, on the plea agreement that was

filed here today; is that correct?

A.     Yes.

Q.     Have you discussed your right to appeal with

Mr.   Devereux?   And do you understand that the plea

agreement in this case provides that you may not appeal

your conviction or sentence, or contest the same in a

1  post-conviction proceeding, unless it is on the grounds

2  of (1) prosecutorial misconduct or (2) ineffective

3  assistance of counsel?

4  A.    Yes.

5  Q.    Do you knowingly and willingly accept these

6  limitations on your right to appeal and to file post-

7  conviction proceedings?

8  A.    Yes.

9        THE COURT:  Mr.  Devereux, have you reviewed each

10  of the terms of the plea agreement with Mr.  Jeremias and

11  are you satisfied that he understands those terms?

12        MR.  DEVEREUX:  I have (inaudible).

13                    **FURTHER EXAMINATION**

14        BY THE COURT:

15  Q.    Mr.  Jeremias, have you had ample time to discuss

16  with Mr.  Devereux any possible defenses that you may

17  have to these charges, and have you told Mr.  Devereux

18  everything that you want him, as your attorney, to know

19  about this case?

20  A.    Yes.

21  Q.    Are you entirely satisfied with the services of

22  your attorney?

23  A.    I am indeed.

24  Q.    Are you telling me that you know and understand

25  fully what you're doing, that you've heard and understood

1  all parts of this proceeding, and that you want me to

2  accept your plea of guilty?

3  A.     Yes.

4  Q.     Do you have any questions, statements or comments

5  that you'd like to make about anything that has been

6  brought up or discussed in the course of this proceeding?

7  If you do, I'll be happy to try to answer any questions

8  you may have, or I'll be glad to hear any statements or

9  comments that you might wish to make, sir.

10  A.     Not at this point.  Thank you.

11  Q.     You'll certainly have an opportunity to make a

12  statement to Judge Reidinger at the time of sentencing,

13  that is provided for by law, and I'm certain that he will

14  listen carefully to anything that you have to say.

15  A.     Thank you.

16  Q.     Mr.  Jeremias, the majority of the questions that

17  I have asked you are contained in a document that is

18  entitled Rule 11 Inquiry and Order of Acceptance of Plea.

19  As I was asking you the questions that are contained

20  within that document I was attempting to accurately

21  record your answers, but I will need for you and

22  Mr.  Devereux to go over this document and make sure that

23  I have indeed accurately recorded your answers.

24        More importantly, I need for you and Mr.  Devereux

25  to make sure that the answers that you gave me to those

questions were truthful.  If, after review, you and

Mr.  Devereux find that the answers to those questions

are both accurate and truthful then I will need for you

and he to sign this document and to then return it back

to me.

Officer Moss, if you would please provide that

document to Mr.  Devereux and to Mr.  Jeremias.

Ms.  Wurst, let me give you the Rule 11 document

-- plea agreement so that you can record that.

Based upon the representations and answers given

by the defendant and his attorney in the foregoing Rule

11 proceeding I find that the defendant's plea is

knowingly and voluntarily made, that the defendant

understands the charges, the potential penalties and the

consequences of his plea, and his plea of guilty is

hereby accepted.

Mr.  Thorneloe, do you have anything else that we

need to take up in regard to Mr.  Jeremias's case from

your standpoint?

MR.  THORNELOE:  Yes, sir.  I have a Consent Order

and Judgment of Forfeiture I'd like to hand up to the

Court.

THE COURT:  All right.  There's now been presented

to me a document entitled Consent Order and Judgment of

Forfeiture in regard to the forfeiture of certain

property referenced therein.  It appears to be signed by
Mr.  Thorneloe, Mr.  Devereux, and Mr.  Jeremias.

I take it the parties are requesting that I
execute that document.  Is that correct, Mr. Thorneloe?

MR.  THORNELOE:  Yes, Your Honor.

THE COURT:  Mr.  Devereux?

MR.  DEVEREUX:  (Inaudible.)

THE COURT:  All right.  I've now signed that Order
of Forfeiture.

Now I have to bring up 18 United States Code 3143
(a)(2).  That statute provides as follows.  The judicial
officer should order that a person who has been found
guilty of an offense in a case described in subparagraph
(a), (b) or (c) of subsection (f)(1) one of Section 3142,
and is awaiting imposition or execution of sentence, be
detained unless (a)(1) the judicial officer finds there's
a substantial likelihood that a motion for acquittal or
new trial will be granted, or an attorney for the
government has recommended that no sentence of
imprisonment be imposed on the person; and (d) the
judicial officer finds by clear and convincing evidence
that the person is not likely to flee or pose a danger to
any other person or the community.

It appears to me that Mr.  Jeremias has now
entered a plea of guilty in -- to one of what I call the

qualifying offenses.  That being he has entered a plea of

guilty under 18, United States Code, Section

3142(f)(1)(A) to a crime of violence as that term is

defined in 18, United States Code, 3156.  Under that

statute, that would include any felony under Chapter

109A, 110 or 117, and to the offense to which

Mr.  Jeremias has entered a plea of guilty is provided

for under Chapter 110.

     I don't believe I can find that there is a

substantial likelihood that a motion for acquittal or new

trial will be granted due to the plea of guilty and the

previous orders of the district court in this matter

regarding the motion to suppress of Mr.  Jeremias.

     Mr.  Thorneloe, is an attorney for the government

going to recommend, or has recommended, that no sentence

of imprisonment be imposed upon Mr.  Jeremias?

     MR.  THORNELOE:  No, Your Honor.

     THE COURT:  It would appear to me that the statute

is mandatory.  I have to order that Mr.  Jeremias be

taken into custody.  But I will certainly hear from you,

Mr.  Devereux, about anything you'd like to tell me in

regard to that issue.

     MR.  DEVEREUX:  (Inaudible.)

     THE COURT:  Thank you very much, Mr.  Devereux.

     Mr.  Thorneloe.

MR. THORNELOE: Your Honor, the only way the
defendant could remain out pending is if he shows an
exceptional reason under 3145C. It's the government's
position that personal belongings is not an acceptable
reason and the Court should detain him.

THE COURT: Unfortunately, Mr. Devereux and
Mr. Jeremias, the statute is mandatory. I don't have
any -- I don't have any discretion in this regard. I
took the oath to follow the law when I took this job, and
I've got to do it whether I agree with it or not.

MR. DEVEREUX: (Inaudible.)

THE COURT: Thank you very much.

Well, unfortunately, I'm going to have to require
that Mr. Jeremias be placed in the custody of the
marshals, and I'm going to have to revoke, pursuant to
the statute, the terms of pretrial release that I
previously entered in this matter. I will place that
order in writing. The defendant would have 14 days in
which he could give notice of appeal. Notice of appeal
would have to be in writing and filed with the clerk's
office.

Anything further, Mr. Thorneloe?

MR. THORNELOE: No, Your Honor, not at this time.
Thank you.

THE COURT: Anything further, Mr. Devereux?

1        MR. DEVEREUX:  (Inaudible.)

2        THE COURT:  Good luck to you, Mr. Jeremias.

3        THE DEFENDANT:  Thank you very much, Your Honor.

4               (Off the record at 11:20 a.m.)

5                     **CERTIFICATE**

6        I, Tracy Rae Dunlap, RMR, CRR, an Official Court
Reporter for the United States District Court for the
7  Western District of North Carolina, do hereby certify
that I transcribed, by machine shorthand, from the
8  court's audio recording system, the proceedings had in
the case of UNITED STATES OF AMERICA versus PAUL
9  JEREMIAS, Criminal Action Number 1:10-CR-62, on June 16,
2011.

10

11        In witness whereof, I have hereto subscribed my
name, this 2nd day of November, 2021.

12               __/S/__Tracy Rae Dunlap__
                 TRACY RAE DUNLAP, RMR, CRR
13               OFFICIAL COURT REPORTER

14

15

16

17

18

19

20

21

22

23

24

25